Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Dorothy Sorey Bohar, Widow of James S. Sorey, Appellees, *v.* Navajo Freight Lines, Inc. and Security Mutual Insurance Company, Insurance Carrier, Appellants.

Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Dorothy Sorey Bohar, Widow of James S. Sorey, Appellees, *v.* Navajo Freight Lines, Inc., Appellant.

26

Argued March 6, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*William L. Kinsley*, with him *Charles Jay Bogdanoff* and *Albert C. Gekoski*, for appellant.

*Gerald J. Haas*, for appellee, Bohar.

*John F. McElvenny*, for appellee, Jones.

*James N. Diefenderfer*, for appellee, Board.

OPINION BY JUDGE MENCER, May 7, 1975:

On the evening of October 10, 1966, James S. Sorey (Sorey) was operating a tractor-trailer rig loaded with 38,000 pounds of heavy equipment and traveling west across Colorado. His destination was Burbank, California, but his fate was such that he would not even reach downtown Pagosa Springs. Upon starting to descend from the top of Wolf Creek Pass, the brakes of his truck became overheated and then caught fire, with the result that Sorey was forced to maneuver his runaway vehicle down and around the hairpin curves that C. W. McCall has memorialized by his folk song "Wolf Creek Pass." Sorey's inability to control his brakeless truck resulted in the vehicle's leaving the highway and plummeting down a steep bank. This accident proved fatal to Sorey.

On January 25, 1968, Dorothy Sorey (claimant)[1] filed a fatal claim petition against Navajo Freight Lines, Inc. (Navajo) and also a fatal claim petition against Charles Jones (Jones). These petitions were filed on behalf of the claimant and her dependent children as a consequence of the death of her husband, James S. Sorey. The referee held that he was an employe of Navajo and awarded compensation. The Workmen's Compensation Appeal Board agreed with the referee and dismissed Navajo's appeal. The instant appeal followed and we affirm.

---

1. Dorothy Sorey remarried on June 28, 1969, and is now Dorothy Bohar.

The crucial question is whether claimant's decedent was, at the time of his death, an independent contractor or an employe of either Navajo or Jones. Although the law relative to this question is settled, its application to any given fact situation is often a difficult task. The facts of this case make that task especially difficult.

Concerning the applicable law, we stated in *J. Miller Co. v. Mixter*, 2 Pa. Commonwealth Ct. 229, 232, 277 A. 2d 867, 869 (1971), the following:

"The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employee. They have, however, set forth indicia of such relationship to be used as guides in making such a determination, some of which are: Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time. Feller v. New Amsterdam Casualty Co., 363 Pa. 483, 70 A. 2d 299 (1950) ; Johnson v. Angretti et al., 364 Pa. 602, 73 A. 2d 666 (1950). These indicia are not to be considered as circumstantial in nature and whether some or all of them exist in any given situation is not absolutely controlling as to the outcome; each case must be determined on its own facts."

Here these legal guidelines must be applied to a factual setting which can be summarized as follows: Sorey's acquisition of the financial backing of one Guido Fusari (Fusari) led to the purchase of a 1966 International tractor which was titled in the name of Fusari.

On July 6, 1966, Fusari entered into an Independent Contractor Lease Agreement with General Expressways, Inc. (General), managed by Navajo, to haul such property by said International tractor as General might require for a period of one year. On July 13, 1966, Fusari executed a power of attorney authorizing Sorey to sign for and handle all matters concerning the 1966 International tractor-trailer.

Charles H. Jones (Jones) was an owner of tractor-trailers[2] and also had been engaged as a commission agent and dispatcher for Navajo. On September 29, 1966, Jones dispatched Sorey to Burlington, New Jersey, to pick up two milling machines to be transported to Burbank, California. The U. S. Government freight waybill was signed by Sorey, using the name "Guido Fusari" as agent for Navajo General Special Commodities Division.

Upon Sorey's return with the milling machines to Jones' base of operations at Cornwells Heights, Pennsylvania, it was decided by Jones that Sorey "couldn't possibly carry this [38,000-pound load] to California" because Sorey "only had a single axle trailer." Jones then offered Sorey the use of Jones' 1964 Ford tractor on a 50-50 deal. Jones would get one-half of the 72 percent gross revenue that Navajo would pay upon completion of the movement and Sorey would retain the other one-half of the 72 percent gross revenue payment.[3] Whereupon, the two milling machines were transferred to Jones' equipment[4] with Navajo placards attached thereto, and

2. Jones also had entered into an Independent Contractor Lease Agreement with General in January 1966 covering a 1964 Ford tractor and various leased trailers.

3. Jones would also receive a 7 percent commission agent fee from Navajo.

4. The record contains conflicting testimony on this point since Navajo's general manager testified that "[t]he freight was not transferred from one trailer to another. The same trailer—it

Sorey was given added freight by Jones to increase his load to 45,000 pounds. This added freight was dropped off at Denver, Colorado, prior to the accident.

Jones then advanced Sorey money for his trip expenses. This advance was in the form of checks drawn on Navajo, signed by Jones as Navajo's agent and payable to Sorey.[5] A trip lease was prepared for the first leg of the trip which would end at Gary, Indiana, and Sorey departed westward. At Gary the trip lease in effect at the time of the accident was prepared. This lease, executed October 10, 1966, listed Navajo as lessee and Jones as owner of the equipment[6] and Sorey as driver. It provided for payment of 72 percent gross revenue to Jones and contained a provision that the driver agree to use authorized routes only[7] and to call Navajo's Gary, Indiana, terminal daily by 10 a.m. Sorey executed this trip lease as agent for Jones, and J. C. Scheetz, an employe at Navajo's Gary terminal executed this trip lease on behalf of Navajo. Thereupon, Sorey continued west to his last ride down the Wolf Creek Pass road leading to downtown Pagosa Springs.

On appeals to this Court in workmen's compensation cases, where the referee has found in favor of the party carrying the burden of proof (here, the claimant) and

was just the power unit, the tractor." However, Jones repeatedly asserted that his equipment was being used at the time of the accident.

5. Jones testified that this was not customary and that on previous occasions Sorey was paid 72 percent of the gross revenues for his own equipment by Navajo as per the contract and this was an exception because Sorey's equipment could not handle a 38,000-pound load.

6. Jones' 1964 Ford tractor and 1947 trailer were identified by serial numbers.

7. Navajo had ICC rights to carry freight on four different routes to Los Angeles.

the Board has heard no additional evidence, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or any necessary findings of fact by the referee were unsupported by substantial evidence. *Leipziger v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 417, 315 A. 2d 883 (1974).

In addition to being mindful of our limited review role, we approach this appeal conscious of two other general legal concepts that have relevance here. It is well-settled that the presence of a party's name (here, Navajo) on a commrcial vehicle raises a rebuttable presumption that the vehicle is owned by that party and that the driver of the vehicle is an employe of that party acting within the scope of his employment. *Fullerton v. Motor Express, Inc.,* 375 Pa. 173, 100 A. 2d 73 (1953). Also, neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment, and inferences favoring the claim need make only slightly stronger appeal to reason than those opposed. *Diehl v. Keystone Alloys Company,* 398 Pa. 56, 156 A. 2d 818 (1959).

The two factual aspects of this case which make its resolution troublesome are that (1) Jones wore two hats; namely, he was a commission agent and dispatcher for Navajo while at the same time he was the owner and operator of tractor-trailers engaged in the movement of goods for others, including Navajo; and (2) Jones and Sorey made a side deal involving a switch of equipment and a new payment arrangement following Jones' (acting as Navajo's agent) initial dispatching of Sorey to Burlington, New Jersey, to transport machinery to Burbank, California.

Following careful review of the record and reflection upon the applicable law, we conclude that the right to control, imbedded in Navajo's trip lease covering the Gary,

Indiana, to Burbank, California, portion of the move,[8] and the unusual factual setting here are the crucial and controlling features of this case and that Sorey was, at the time of his death, an employe of Navajo. Sorey was required by Navajo to call its Gary terminal daily by 10 a.m. and to use authorized routes only on his travel from Gary to Burbank. This part of the trip was made under Navajo's Interstate Commerce Commission rights, and Jones had no contact with Sorey after he reached Navajo's Gary terminal. Navajo, through its agent, made monetary advances to Sorey, and its name signs affixed to the equipment proclaimed Navajo's ownership. Navajo's agent arranged with Sorey to move two milling machines to California. Sorey's physical condition and driver's license credentials[9] had been checked and approved by Navajo previous to the execution of the trip lease in question.

All of these factors[10] direct our determination to an affirmance of the Board's decision. We recognize that this record contains evidence which might have justified the referee in drawing other inferences and making contra-findings. However, unless new evidence is heard by the Board, the Board, and we on review, must accept factual determinations made by the referee when those findings are supported by competent evidence. *See Universal*

8. The trip lease under which Sorey was driving at the time of his death provided that the equipment covered by the lease "is in the exclusive possesion, control and use of the authorized carrier lessee," which was Navajo.

9. Every relevant document named Sorey as a driver and Sorey was not operating equipment that he either owned or had any ownership interest in at the time of the fatal accident.

10. We hold to the view that these enumerated factors make the instant case distinguishable from *Walton v. Harold M. Kelly, Inc.*, 6 Pa. Commonwealth Ct. 236, 293 A. 2d 627 (1972), and *J. Miller Co. v. Mixter, supra.*

*Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973).

Therefore, for the above reasons, we enter the following.

ORDER

Now, this 7th day of May, 1975, the order of the Workmen's Compensation Appeal Board is affirmed, and it is ordered that judgment be entered in favor of the claimant, Dorothy Sorey Bohar, for herself and her three minor children and against Navajo Freight Lines, Inc., for compensation to be computed at the rate of $52.50 per week for the period from October 19, 1966 to and including August 29, 1970, and at the rate of $47.50 per week for the period from August 30, 1970 to and including October 15, 1971, and at the rate of $28.75 per week for the period from October 16, 1971 to and including January 4, 1974, and at the rate of $22 per week for the period from January 5, 1974 to and including May 18, 1976, and at the rate of $16 per week for the period from May 19, 1976 to and including February 25, 1979, with legal interest on all deferred payments, and funeral expenses in the amount of $750, all within the terms of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1 et seq.