509 A.2d 1337

Shreiner Trucking Company and Westmoreland Casualty Company, Petitioners *v.* Workmen's Compensation Appeal Board (Wagner), Respondents.

Argued March 13, 1986, before Judges CRAIG and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

*Fred C. Trenor, Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioners.

*Neil J. Rovner, Angino & Rovner, P.C.,* for respondent, Mary P. Wagner.

*Judith L. White, Nikolaus, Hohenadel, Chesters & Umbenhauer,* for respondent, Mid-Western Freight Lines.

OPINION BY JUDGE MACPHAIL, May 12, 1986:

Shreiner Trucking Company (Shreiner) and its insurance carrier, Westmoreland Casualty Company, appeal from an order of the Workmen's Compensation Appeal Board (Board) affirming an award of benefits, by a referee to Mary Wagner (Claimant) based on her fatal claim petition seeking workmen's compensation benefits from Shreiner.

On January 26, 1977, Edward Wagner, Jr. (decedent) was killed when the truck he was driving to Nevada, which was owned by Shreiner, plunged down an embankment near Shelby, Iowa. The parties do not dispute that decedent was in the course of his employment or that his death was related thereto; Shreiner's main contention on appeal is that the referee erred as a matter of law in finding that Shreiner and not Midwestern Freight Lines (Midwestern) was decedent's employer.

Shreiner hauled freight under its own I.C.C. permit and leased its equipment to other carriers to haul freight under their I.C.C. permits. Ronald Shreiner, the principal owner of the trucking concern, also worked as a commission agent for Midwestern. As a commission agent, Mr. Shreiner solicited freight for transport and arranged for a truck company to haul that freight, executing the necessary documents.

Midwestern had an I.C.C. permit to haul freight to Nevada; Shreiner did not, although it had an I.C.C. permit to transport freight from Nevada to the East Coast. Shreiner had a customer, Howmet, that needed freight hauled to Nevada. In December of 1976, Mr. Shreiner solicited Howmet's freight for transport for

Midwestern and arranged for Shreiner Trucking Co. to haul the freight under a lease agreement with Midwestern. A 30-day lease was entered into, the terms of which provided that Midwestern was the Lessee, and that Shreiner Trucking Co., with decedent as its driver, was Lessor. The "Terms and Conditions of the Lease" also provided, in pertinent part:

> The Lessor agrees to deliver to the Lessee the above equipment in good running order and condition; maintain the same in good working condition, furnishing all necessary oil, gasoline, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation.

> The authorized carrier Lessee agrees to properly and correctly identify with signs the leased equipment in accordance with the I.C.C. requirements. . . .

> The Lessor shall surrender full control, possession, and management of said equipment to the Lessee during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination, and the Lessor further agrees to operate said equipment as directed by Lessee.

> All taxes of any nature whatsoever, and all licenses and fines that may be assessed against the equipment while same is being used by the Lessee, where such fines are caused through improper equipment and/or operation of the property leased, shall be deducted from the amount due the Lessor under this agreement.

> It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full respon-

sibility in respect to the equipment it is operating to the public, the shippers, and the Interstate Commerce Commission. It is agreed that Lessor will carry acceptable Public Liability and Property Damage Insurance. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment.

*Lessor is to pay driver's salary, compensation coverage, and all taxes, state or federal, based on payroll. Lessor indemnifies Lessee against any loss resulting from the injury or death of such drivers.* (Emphasis added.)

Shreiner listed decedent on both its payroll records and the "Employer's Quarterly Federal Tax Return" for 1976 and 1977.

Claimant, decedent's widow, filed two fatal claim petitions, one alleging Shreiner as decedent's employer and the other alleging Midwestern. The petitions were consolidated before the referee, who, after several hearings spanning three years, resolved the issue of decedent's employment against Shreiner and dismissed the claim petition against Midwestern. Shreiner appealed to the Board, which affirmed. The instant appeal followed.

Shreiner argues that *Workmen's Compensation Appeal Board v. Navajo Freight Lines, Inc.*, 19 Pa. Commonwealth Ct. 25, 338 A.2d 766 (1975) is dispositive of the issue of who was decedent's employer. In *Navajo*, a truck driver, Sorey, purchased a 1966 tractor trailer. Jones, a commission agent and dispatcher for Navajo, dispatched Sorey and his 1966 truck to Burlington, New Jersey to pick up two milling machines. Although the machines' final destination was California, Sorey first returned to Jones' base of operations in Pennsylvania where the two milling machines were transferred to a

truck owned by Jones. Navajo placards were attached to the sides of this truck. Jones added additional freight to the rig, and a trip lease was entered into identifying Navajo as the lessee, Jones as owner of the rig, and Sorey as driver. On route to California, the truck brakes caught fire. Sorey was unable to control the brakeless truck, which resulted in a fatal accident.

The Board affirmed a workmen's compensation referee who concluded that Navajo was Sorey's employer. In reviewing the referee's decision, we concluded that "the right to control, imbedded in Navajo's trip lease . . . and the unusual factual setting here are the crucial and controlling features of this case and that Sorey was, at the time of his death, an employee of Navajo." 19 Pa. Commonwealth Ct. at 31-32, 338 A.2d at 769. In reaching this conclusion, we first noted that "the presence of a party's name (here, Navajo) on a commrcial [sic] vehicle raises a rebuttable presumption that the vehicle is owned by that party and that the driver of the vehicle is an employee of that party acting within the scope of his employment." *Id.* at 31, 338 A.2d at 769. We also pointed out a "troublesome" feature of the case, namely that "Jones wore two hats; . . . he was a commission agent and dispatcher for Navajo while at the same time he was the owner and operator of tractor-trailers engaged in the movement of goods for others, including Navajo. . . ." *Id.* Shreiner has seized upon this language in *Navajo* to identify itself with Jones and argue that Midwestern as lessee was decedent's employer.

We believe that *Navajo* is distinguishable from the case *sub judice*. First of all, we enumerated a list of factors[1] in *Navajo* to support our conclusion, only one of

---

[1] These enumerated factors were:

Sorey was required by Navajo to call its Gary terminal daily by 10 a.m. and to use authorized routes only on his travel from Gary to Burbank. This part of the trip was

which is arguably present here, that being the fact that the truck displayed Midwestern's I.C.C. permit. This is not enough to bring the instant matter under *Navajo*. Moreover, the record reveals that Midwestern did not hire, and did not have the right to fire, decedent; that decedent was required to call Shreiner to check his routing and assignments, and that decedent did not receive any monetary advances from Midwestern. We believe these facts are more akin to the "borrowed employee" line of cases than to *Navajo*. The seven principles applicable to borrowed employees are summarized below:

> (1) one who is in the general employ of one employer may be transferred to the service of another in such a manner that he becomes an employee of the second employer; (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it; (3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised; (4) *where one is engaged*

---

made under Navajo's Interstate Commerce Commission rights, and Jones had no contact with Sorey after he reached Navajo's Gary terminal. Navajo, through its agent, made monetary advances to Sorey, and its name signs affixed to the equipment proclaimed Navajo's ownership. Navajo's agent arranged with Sorey to move two milling machines to California. Sorey's physical condition and driver's license credentials had been checked and approved by Navajo previous to the execution of the trip lease in question.

19 Pa. Commonwealth Ct. at 32, 338 A.2d at 769-770.

*in the business of renting out trucks and furnishes a driver as part of the hiring of the truck, there is a presumption that the driver remains in the employ of his original employer until there is evidence that the second employer in fact assumed control over the employee's manner of performing his work;* (5) facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special traning required by the work for the second employer, and employment at a daily or hourly rate for no definite period; (6) the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship; and (7) *when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact.*

*Daily Express, Inc. v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 434, 436-37, 406 A.2d 600, 601-602 (1979) (emphasis added), summarizing *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953). Since the facts are disputed, the determination of who is the decedent's employer is one of fact. Application of the borrowed employee principles to the facts at hand lead us to the conclusion that substantial evidence supports the referee's findings. Mindful that our scope of review is limited here to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence, we find no error in the referee's

determination that decedent was an employee of Shreiner. *See also Workmen's Compensation Appeal Board v. Dupes,* 24 Pa. Commonwealth Ct. 47, 353 A.2d 908 (1976).

Shreiner has also asked this Court to remand the case to either the Board of referee so that it could be awarded appropriate credit for any overpayment of compensation benefits to Claimant. Our review of the record reveals that by interlocutory order dated July, 1977, the referee determined that compensation benefits in the amount of $199.00 per week were due Claimant, half to be paid by Shreiner and the other half to be paid by Midwestern. In his subsequent decision dated January 13, 1983, the referee ordered compensation payable by Shreiner as follows:

(b) from 6-12-79 to 11-4-81, compensation is payable to Claimant the rate of $149.25 per week as parent and natural guardian of her minor children Todd McCance, Steven McCance, and Edward S. Wagner, III: also from 6-12-79 to 11-4-81, compensation is to be paid to a guardian to be named by the WCAB (see Section 307(7) of the Act)[2] at the rate of $49.75 per week, said payments for the benefit of Priscilla Lynn Wagner. . . .

(c) from 11-5-81 to 7-30-82, compensation is payable to Claimant at the rate of $199.00 per week as parent and natural guardian of her minor children, Todd McCance, Steven McCance, and Edward S. Wagner, III.

(d) from 7-31-82 to 11-2-84, compensation is payable to Claimant at the rate of $170.73 per week as parent and natural guardian of her mi-

---

[2] Section 307 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §542.

nor children, Steven McCance and Edward S. Wagner, III;

(e) from 11-3-84 to not later than 6-26-89, compensation is payable to Claimant at the rate of $130.08 per week as parent and natural guardians of her minor child, Edward S. Wagner, III.

. . . .

4. Defendants herein are entitled to credit for all compensation paid heretofore in compliance with Interlocutory Orders of this Referee; moreover, in final adherence to Section 410 of the Act, Defendants herein are directed below to reimburse Defendant Mid-Western . . . for all compensation paid by the latter, also in compliance with the Interlocutory Orders.

5. So far as a guardian for Priscilla Lynn Wagner [whereabouts unknown] is concerned, this Referee notes that such appointments appear to be exclusively the province of the WCAB—see Section 307(7) of the Act. This Referee recommends that the Board, on proper application made, appoint [Claimant's counsel as a] guardian for Priscilla Lynn Wagner. . . .

It is Shreiner's position that Claimant erroneously received the $49.75 per week due Priscilla Lynn Wagner or her guardian, and that therefore a credit is due for these payments. It is undisputed that Claimant did in fact receive the benefits due Ms. Wagner and that the Board did not appoint a guardian on her behalf. Because the Board failed to make any findings of fact or conclusions of law on this issue, we will remand the matter to the Board solely for its determination on the issue of a guardian for Ms. Wagner and the amount, if any, of credit due Shreiner. *See Borough of Wilmore v. New,* 54 Pa. Commonwealth Ct. 145, 419 A.2d 1383 (1980).

ORDER

The order of the Workmen's Compensation Appeal Board, dated December 13, 1984, at Docket No. A-85417, is hereby affirmed and the case remanded for proceedings consistent with the foregoing opinion to determine whether a guardian for Priscilla Lynn Wagner should be appointed and the amount of credit, if any, due Shreiner Trucking Company.