IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Carroll, :
                Petitioner :
 :
        v. :
 :
Workers' Compensation Appeal :
Board (Nealson Trucking, Inc. and :
Uninsured Employers Guaranty Fund), : No. 1395 C.D. 2019
                Respondents : Submitted: February 14, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: April 27, 2020


        William Carroll (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) September 12, 2019 order affirming the WC Judge's (WCJ) decision dismissing his WC claim petitions against Nealson Trucking, Inc. (Nealson) (Claim Petition) and the Uninsured Employers Guaranty Fund (UEGF) (UEGF Petition) (collectively, the Petitions). Claimant presents three issues for this Court's review: (1) whether the WCJ failed to afford Claimant the presumption that he was Nealson's employee;[1] (2) whether the WCJ misapplied the test in determining Claimant was not Nealson's employee; and (3) whether substantial evidence supports the WCJ's determination that Claimant was an independent contractor. After review, we affirm.

        [1] In his Statement of the Questions Involved, Claimant describes the issue as whether the Board and WCJ erred by determining that Claimant was not Nealson's employee. *See* Claimant Br. at 4. However, Claimant's argument addresses the WCJ's alleged failure to afford Claimant the presumption.

On December 14, 2016, Claimant filed the Claim Petition alleging that he sustained a work injury in the course and scope of his employment with Nealson. Specifically, Claimant averred therein that, on August 9, 2016, he suffered a severe cranial fracture with accompanying traumatic brain injury and associated cognitive and neurological deficits, when a commercial hook used to load a dumpster into Nealson's truck struck him in the head. On March 8, 2017, Claimant filed the UEGF Petition. The Petitions were assigned to a WCJ and, at an April 25, 2017 hearing, the WCJ and the parties agreed to bifurcate the issues and first decide whether Claimant was Nealson's employee at the time of his injury.

On May 23, 2018, the WCJ held that Claimant failed to establish he was Nealson's employee at the time of his injury. Claimant appealed to the Board. On September 12, 2019, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Initially,

[w]hether one's status is that of an employee or independent contractor 'is a crucial threshold determination that must be made before granting [WC] benefits.' *Universal Am-Can[, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328,] 330 [(Pa. 2000)]. This is because independent contractors cannot recover benefits under the [WC] Act[3] ([] Act). The claimant bears the 'burden to establish an employer[-]employee relationship in order to receive benefits.' *Universal Am-Can*, 762 A.2d at 330.

. . . . There is no bright line rule for determining whether a particular relationship is that of an employer-employee or owner-independent contractor. Nevertheless, our Supreme

[2] "This Court's scope of review of an order of the Board is limited to determining whether there has been a violation of constitutional rights, an error of law or a violation of relevant regulations of the Board and whether necessary findings of fact are supported by substantial evidence." *Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067 n.3 (Pa. Cmwlth. 2015).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Court has established the following factors that must be considered when making such determination:

> Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.
>
> *Id.* at 333 (quotation marks and citations omitted) (quoting *Hammermill Paper Co*[.] *v. Rust Eng*[*'g*] *Co*[.], . . . 243 A.2d 389, 392 ([Pa.] 1968)).   'Whether some or all of these factors exist in any given situation is not controlling.' *Id.* **Although each factor is relevant, 'control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status.'** *Id.* 'Moreover, it is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised.' *Id.* (emphasis in original).

*Dep't of Labor & Indus. v. Workers' Comp. Appeal Bd. (Lin & E. Taste)*, 155 A.3d 103, 109-10 (Pa. Cmwlth. 2017), *aff'd*, 187 A.3d 914 (Pa. 2018) (bold emphasis added; citations and italic emphasis omitted).

Claimant first argues that the Board erred by upholding the WCJ's decision because the WCJ failed to apply the presumption that Claimant was Nealson's employee insofar as he was using Nealson's truck bearing Nealson's name.

"[I]t is well[ ]settled that the presence of a party's name on a commercial vehicle raises a **rebuttable** presumption that the driver of the vehicle is an employee of that party acting within the scope of his employment." *Samuel J. Lansberry, Inc. v. Workmen's Comp. Appeal Bd. (Switzer)*, 649 A.2d 162, 165 (Pa. Cmwlth. 1994) (emphasis added); *see also W.W. Friedline Trucking v. Workmen's Comp. Appeal Bd. (Reynolds)*, 616 A.2d 728 (Pa. Cmwlth. 1992);  *Southland Cable Co. v. Workmen's*

3

*Comp. Appeal Bd. (Emmett)*, 598 A.2d 329 (Pa. Cmwlth. 1991); *Shreiner Trucking Co. v. Workmen's Comp. Appeal Bd. (Wagner)*, 509 A.2d 1337 (Pa. Cmwlth. 1986); *Workmen's Comp. Appeal Bd. v. Navajo Freight Lines, Inc.*, 338 A.2d 766 (Pa. Cmwlth. 1975). A rebuttable presumption is "a rule of substantive law designed to force a trier of fact to reach a certain conclusion once a given set of facts are established, unless contrary evidence is introduced." *Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1043 (Pa. 2017). In other words, "[a] rebuttable presumption forces the defendant to come forth or suffer inevitable defeat on the issue in controversy." *Commonwealth v. Shaffer*, 288 A.2d 727, 735 (Pa. 1972).

Here, the WCJ explained:

> Based upon a review of the evidentiary record as a whole, this [WCJ] does not find that Claimant was an employee of Nealson [] when his injury occurred on August 9, 2016. **Although Nealson [] supplied the truck he used when he was injured, the other factors in this case lead this [WCJ] to find Claimant was an independent contractor and not an employee.**[4]

Claimant Br. at App. A-18 (emphasis added).

In reviewing the WCJ's decision, the Board reasoned:

> [Nealson's] ownership of the truck is undisputed. The WCJ credited the testimony of [Nealson's] owner Gregg Hetherington [(Hetherington)], who testified that Claimant was a family friend and was driving the truck for no compensation. [The WCJ] found that Claimant had driven the truck on previous occasions when [] Hetherington was on vacation and that [] Hetherington exercised no control over Claimant's activities. **The WCJ considered the ownership of the truck and any signage on the truck along with the other relevant factors in determining the existence of an employment relationship. Any**

---

[4] The other factors are discussed more fully below.

4

> **presumption in favor of an employment relationship was rebutted by the credible testimony**.[5]

Claimant Br. at App. A-26 (emphasis added). Clearly, both the WCJ and Board afforded Claimant the presumption to which he was entitled. Thus, Claimant's argument to the contrary is without merit.

Claimant next contends that the Board erred by affirming the WCJ's decision because the WCJ misapplied the test to determine whether Claimant was Nealson's employee. Specifically, he claims that

> the WCJ relied on the false idea that . . . Hetherington could not exercise control over [Claimant], as Hetherington was on vacation. . . . [E]ven though . . . Hetherington . . . did not actually exercise control over [Claimant], he/it did have a right to control the work Claimant was hired to do as well as the manner in which [Claimant] performed the work.

Claimant Br. at 11. Further, Claimant states:

> The WCJ wholly ignored the facts adduced during this litigation. First, [Claimant] was supplied his employer's truck (with Nealson's logo on the door), he was provided fuel, given the locations to service customers, told the days to work and, at the time of his accident, was servicing a Nealson [] customer location to pick up a Nealson [d]umpster. [Claimant] did not own the truck nor the dumpster and did not know the customer, it was all Nealson [].

Claimant Br. at 13. Claimant argues that he "was loading [Nealson]'s dumpster when the accident occurred, all on behalf of [Nealson] while [] Hetherington was away. The right to control existed at all times. [Nealson] owned the truck. [] Hetherington

---

[5] In *Universal Am-Can*, the Pennsylvania Supreme Court rejected the claimant's contention that an insignia on a vehicle creates an **irrebuttable presumption** of employment status, explaining: "The presence of a carrier's insignia on the outside of a rig is merely **one of the many factors** to be considered when determining employee/independent contractor status and does not command a conclusion of employee status." *Universal Am-Can*, 762 A.2d at 332 (emphasis added).

could have told [Claimant] to bring it back, not drive it anyway, leave the location[,] etc." Claimant Br. at 14.

The law is well established that "control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status. Moreover, it is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised." *Universal Am-Can,* 762 A.2d at 333 (citations omitted). This Court has reasoned:

> Control exists where the alleged employer: 'possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee.' *Am. Rd. Lines* [*v. Workers' Comp. Appeal Bd. (Royal)*], 39 A.3d [603,] 611 [(Pa. Cmwlth. 2012)] ([quoting] *3D Trucking v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281 (Pa. Cmwlth. 2007)).

*Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162-63 (Pa. Cmwlth. 2016) (citations omitted).

"Whether an employer-employee relationship exists is a question of law based upon findings of fact."[6] *B & T Trucking v. Workers' Comp. Appeal Bd. (Paull)*, 815 A.2d 1167, 1171 (Pa. Cmwlth. 2003). In deposition testimony, Claimant stated that he is a law enforcement officer for Upper Dublin Township (Township). According to Claimant, he has had a commercial driver's license since he was 18 years old, *see* Reproduced Record (R.R.) at 45a, and has known Hetherington, a close personal friend, since 1995. *See* R.R. at 15a. Claimant recounted that, in 1995, he drove a dumpster truck with Hetherington at Nealson Hauling, Inc., Hetherington's father's business. *See* R.R. at 14a-16a. In approximately 2000, Hetherington instructed Claimant on how to operate a roll-off truck. *See* R.R. at 59a-60a. After

---

[6] "Because the determination as to the existence of an employer[-]employee relationship is a question of law, on this issue, our scope of review is plenary and our standard of review is *de novo*." *Lin*, 155 A.3d at 109.

6

Hetherington's father died and Hetherington started Nealson, Claimant drove a truck for Nealson in 2013, possibly in 2014, and in August 2015 while Hetherington and his family were on vacation. *See* R.R. at 21a, 27a, 64a, 73a. Claimant was paid for that work. *See* R.R. at 21a, 28a. Claimant denied having executed a written independent contractor agreement at any time. *See* R.R. at 41a. During the entire period Claimant worked for either Nealson Hauling, Inc. or Nealson, Claimant would report the number of hours worked, and he would be paid in cash. *See* R.R. at 62. Claimant also related that he had previously driven trucks for several other companies while working as a Township police officer. *See* R.R. at 24a-25a, 64a-65a.

Claimant stated that, following Hetherington's wife's 2016 death, Hetherington asked Claimant to drive the truck while Hetherington was in North Carolina spreading his wife's ashes. *See* R.R. at 33a. Claimant expected to be paid, as he had been previously. *See* R.R. at 32a.

Claimant recalled that, during the week the accident occurred, Claimant picked up Nealson's truck at Nealson's yard. *See* R.R. at 37a, 18a. Claimant took the truck keys from Nealson's unlocked office and determined the stops he would be making by noting recorded customer phone requests on a pad (pick-up slips). *See* R.R. at 37a, 38a-39a. Claimant did not provide any tools, and Nealson supplied Claimant with all materials he needed to do the jobs. *See* R.R. at 55a. Hetherington left money for Claimant to purchase fuel. *See* R.R. at 54a. Hetherington did not give him any instructions for performing the jobs or driving the truck, and never told him he was obligated to drive the truck.[7] *See* R.R. at 39a-40a. Claimant admitted that he was free to refuse to drive the truck at any time. *See* R.R. at 40a.

---

[7] Claimant denied that he had ever received any direction from Hetherington regarding how soon a pick-up should be made after a customer request was received, or the manner in which pick-ups should be performed. *See* R.R. at 48a.

Claimant recounted that, on the day of the accident, he retrieved Nealson's pick-up slips and performed a pre-trip truck inspection before departing Nealson's yard. *See* R.R. at 45a. Claimant stated he had no indication that any pick-ups were urgent, and Hetherington had not contacted him with any instructions pertaining to pick-ups to be made that day. *See* R.R. at 47a. Claimant did not ask Hetherington for payment for driving the truck after the accident because he was hospitalized. *See* R.R. at 36a.

Hetherington testified that he ran Nealson Hauling, Inc. for his father, who died in 2006. *See* R.R. at 84a. Hetherington owns Nealson, a company that hauls, picks up and delivers dumpsters, which he began in approximately 2010. *See id.* Hetherington is Nealson's only employee, and Rich Tyson (Tyson) is a subcontractor who, at the time of the accident, worked part-time, two to three times per week. *See id.* Hetherington denied that Claimant had worked for Nealson prior to August 2016, but acknowledged that Claimant had worked for Nealson Hauling, Inc. *See id.* Hetherington recounted that Claimant, a close friend, had approached him at a luncheon after Hetherington's wife's memorial service. *See* R.R. at 85a. According to Hetherington, Claimant knew that he needed to take his wife's ashes to North Carolina and

> [h]e approached me and told me we hadn't been on vacation in years. He told me that you need to go down to North Carolina to do this for your wife. He said my gift to you is I will drive your truck in the time [sic] . . . -- he did not want any compensation at all for doing that.

R.R. at 86a.

Hetherington stated he discussed dates with Claimant, who explained to Hetherington that he would be taking vacation from his Township job. Hetherington was aware Claimant had driven trucks for other companies. *See* R.R. at 87a. Hetherington denied providing Claimant an itinerary for the week, and explained that

Claimant and Tyson would check the phone messages on Nealson's answering machine from customers needing their dumpsters emptied and would set up their schedules accordingly. *See id.* He admitted leaving money for fuel and acknowledged that Claimant was driving Nealson's truck on the day of the accident. *See id.* He explained that Nealson supplied the only tools/equipment needed – the truck and tarps. *See id.* Hetherington recounted that he had taught Claimant to drive the dumpster truck in 1997 when he worked for Nealson Hauling, Inc. *See id.* Hetherington further expressed that, after Claimant offered to drive his truck during August 2016, he did not feel Claimant was under any obligation to do so and would not have insisted he do so because he considered Claimant's offer a favor. *See* R.R. at 91a. Hetherington denied that Claimant requested payment for the August 2016 work, that Claimant was on Nealson's payroll, and that Nealson paid Claimant's Social Security taxes, withheld Claimant's income tax, or provided tax forms to Claimant. *See id.*

"As the sole fact-finder in [WC] cases, the WCJ has exclusive province over issues of credibility and evidentiary weight." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 611 (Pa. Cmwlth. 2019). The WCJ found Claimant credible; however, with respect to whether Claimant was to be paid for driving the truck, the WCJ credited Hetherington's testimony that Claimant drove the truck as a gift to Hetherington. The WCJ also found Hetherington credible, except with respect to his testimony that Claimant had never done any work for Nealson in the 12 years prior to the accident.

The WCJ explained:

Significant factors in [determining whether Claimant was an employee or an independent contractor] include and are not limited to the following:

a. Claimant volunteered to drive the truck and drop off and pick up the dumpsters for the week. [] Hetherington was

9

away complying with his wife's final request to bury her ashes. [Claimant] was not being paid for his activities;

b. Hetherington did not know when/if Claimant reported for work on any given day or what he was doing on any given day;

c. Claimant received his assignments directly from a call-in log rather than from any employee of Nealson [];

d. Claimant did not have to report to anyone at Nealson [] his activities but conducted them completely on his own, and, in fact, [] Hetherington was several states away while Claimant was conducting his activities;

. . . .

f. Claimant testified that [] Hetherington did, many years previously, show him how to use the truck he used to deliver and pick[ ]up the dumpsters. However, it appears the company was, at that point, Nealson Hauling, Inc., not Nealson []; and[]

g. **What is conspicuously absent from the record in this matter is any indication that [] Hetherington had any ability to control the manner in which Claimant conducted his activities**. **The most important factor in determining whether one is an employee of another is the purported employer's ability to control the manner in which the purported employee's activities are performed, regardless of whether such control is exerted**. **In the present matter, no such evidence was solicited**. **Furthermore, [] Hetherington was several states away while Claimant was conducting his activities, so he did not have the ability to control the manner in which the work was performed**. **This [WCJ] cannot infer such ability; it must be established in the record**.

Claimant Br. at App. A-18-19 (emphasis added).

The record supports the WCJ's factual findings that Claimant offered to drive Nealson's truck as a favor to Hetherington, and that Hetherington was not involved in Claimant's work performance that day. Hetherington was in North

Carolina while Claimant voluntarily arrived at Nealson's unlocked office, retrieved the truck keys himself, obtained Nealson's customers' pick-up requests from the answering machine, inspected the truck, and drove to the customers' locations. Further, there is no record evidence that Nealson exercised any control over Claimant's work **or that it had the right to direct how Claimant performed the job that day**. The fact that Claimant drove Nealson's truck to perform the work for Nealson's customers is not, by itself, sufficient to establish that Nealson had the right to control Claimant's work. Here, other record evidence supported the WCJ's conclusion that Nealson overcame the presumption that Claimant was an employee. Accordingly, the Board properly affirmed the WCJ's determination that Claimant was not Nealson's employee.

Finally, in a one-paragraph argument, Claimant contends that substantial evidence does not support the WCJ's conclusion that Claimant was an independent contractor. Claimant argues:

> [Claimant] had no customers of his own, did not own the truck, did not provide the fuel or maintenance for the vehicle. [Claimant] was provided the locations to service the customers, and when he was injured[,] it was in the course of loading a [Nealson] [t]ruck dumpster at [Nealson's] customer['s] location. There is simply no evidence that [Claimant] was an independent contractor at the time he was injured while working at [Nealson's] customer location.

Claimant Br. at 17. Notwithstanding Claimant's contention, his and Hetherington's credible testimony is substantial evidence supporting the WCJ's legal conclusion that Claimant was an independent contractor and not Nealson's employee.

For all of the above reasons, the Board's decision is affirmed.

_____
ANNE E. COVEY, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Carroll,                    :
              Petitioner         :
                                      :
           v.                   :
                                      :
Workers' Compensation Appeal    :
Board (Nealson Trucking, Inc. and   :
Uninsured Employers Guaranty Fund),   :    No. 1395 C.D. 2019
              Respondents      :


# O R D E R

AND NOW, this 27th day of April, 2020, the Workers' Compensation Appeal Board's September 12, 2019 order is affirmed.


_____
ANNE E. COVEY, Judge