Department of Labor and Industry, :
Uninsured Employers Guaranty :
Fund, :
                    Petitioner :
                    :
        v.          : No. 627 C.D. 2016
                    : SUBMITTED: November 4, 2016
Workers' Compensation Appeal :
Board (Lin and Eastern Taste), :
                    Respondents :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE HEARTHWAY                    FILED: February 17, 2017


        The Commonwealth of Pennsylvania, Department of Labor and Industry, Uninsured Employers Guaranty Fund (Fund) petitions for review of the March 23, 2016, order of the Workers' Compensation Appeal Board (Board), which affirmed the October 28, 2015, decision of the workers' compensation judge (WCJ) awarding Fu Xiang Lin (Claimant) benefits on remand pursuant to the Board's previous order of January 6, 2015, and which made the Board's January 6, 2015, order final. Because we determine that Claimant was not an employee of Eastern Taste at the time of his injury, we reverse.

        On March 28, 2011, Claimant was injured while doing remodeling work for Eastern Taste, a restaurant that had not yet opened for business.

(Findings of Fact (F.F.), Nos. 1, 5c.)[1] Claimant subsequently filed a Claim Petition against Eastern Taste, and later, a Notice of Claim against the uninsured employer, Eastern Taste. (F.F Nos. 2-3.) Claimant then filed a Claim Petition against the uninsured employer and the Fund. (F.F. No. 4.)

During the litigation before the WCJ, the issue of whether Claimant was an employee of Eastern Taste was bifurcated from the medical issues of the claim. (Reproduced Record (R.R.) at 37a-38a.). Claimant testified on his own behalf. Eastern Taste presented the testimony of Kon Bin Wang (Wang), the restaurant owner's husband, and Gheng Renkuar (Renkuar), who was also working on remodeling the restaurant. (F.F. Nos. 6a, 7a.) Based on the testimony, the WCJ found that the critical facts were essentially undisputed and made the following findings:

a. Eastern Taste is a restaurant, not a construction business.

b. The Claimant was hired to do remodeling before the restaurant had ever opened.

c. The most experienced person on the job in the construction business was the Claimant.

d. The owner's husband was in charge of what needed to be done.

e. The Claimant was paid on a per diem basis to do it along with three others.

f. The Claimant used his own tools and van. The owner's husband provided tools and materials as well.

---

[1] All references to the Findings of Fact and Conclusions of Law (C.L.) are to those set forth in the WCJ's decision dated April 17, 2013.

(WCJ's F.F. Nos. 9a-f.) The WCJ further determined that: (i) Claimant was not an employee of Eastern Taste Restaurant; (ii) Claimant's work was not in the regular course of the business of Eastern Taste; and (iii) Claimant's employment was casual in nature.[2] (F.F. Nos. 10-12.) The WCJ concluded that Claimant failed to sustain his burden to prove that he was an employee of Eastern Taste. (Conclusions of Law (C.L.) No. 2.) The WCJ also determined that Claimant was not considered an employee under the Construction Workplace Misclassification Act (CWMA).[3] The WCJ reasoned that the CWMA does not apply as Eastern Taste is not in the construction industry. (C.L. No. 4, WCJ's opinion (op.) at 4.) Consequently, the WCJ denied Claimant's Claim Petitions filed against Eastern Taste and the Fund.

Claimant appealed the WCJ's decision to the Board. On January 6, 2015, the Board issued an opinion in which it concluded that Claimant was an employee of Eastern Taste. (Board's 1/6/15 op. at 5.) The Board also concluded that Claimant's employment was not casual in nature. (Board's 1/6/15 op. at 5-6.) Accordingly, the Board reversed the WCJ's decision and remanded the matter to

---

[2] The WCJ characterized these determinations as findings of fact, but they are really conclusions of law. *See Brookhaven Baptist Church v. Workers' Compensation Appeal Board (Halvorson)*, 912 A.2d 770 (Pa. 2006) (concerning casual and in the regular course of business); *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328 (Pa. 2000) (concerning employee). The Workers' Compensation Act defines an employee to be "synonymous with servant, and includes—[a]ll natural persons who perform services for another for a valuable consideration, exclusive of … persons whose employment is casual in character and not in the regular course of the business of the employer …." Section 104 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 22.

[3] Act of October 13, 2010, P.L. 506, 43 P.S. §§ 933.1-933.17.

the WCJ for necessary findings and conclusions for an award of compensation and litigation costs, if any. (Board's 1/6/15 op. at 8.)

On remand, the WCJ entered an order, dated October 28, 2015, granting Claimant's Claim Petition and awarding benefits to Claimant. (R.R. at 141a.) The Fund then appealed to the Board and requested that the Board's January 6, 2015, opinion be made final for the purpose of appealing to this Court. (R.R. at 143a-45a.) On March 23, 2016, the Board issued an opinion making its January 6, 2015, order final, and affirming the WCJ's decision dated October 28, 2015. (R.R. at 149a-52a.)

The Fund now appeals to this Court.[4] The Fund argues that the WCJ's April 17, 2013, decision was supported by substantial evidence, and that the Board exceeded its authority by reweighing the evidence and engaging in impermissible fact-finding. The Fund further argues that the Board erred by relying on its impermissible "findings" to conclude Claimant was an employee.

In order to determine if the Board engaged in fact-finding, we must review the Board's "findings" and any inferences therefrom against those made by the WCJ to determine if they are consistent. In doing so, we are necessarily tasked with reviewing the WCJ's findings to determine if they are supported by substantial evidence. In other words, "we examine the entire record to see if it

---

[4] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993).

4

contains evidence a reasonable person might find sufficient to support the WCJ's findings." *Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016). "Further, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *Id*. at 1161-62. "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Id*. at 1161 (quotation marks and citation omitted). If so, "the findings must be upheld, even though the record may contain conflicting evidence."[5] *Id.*

In explaining that Claimant met his burden to establish that he was an employee, the Board stated that "[a]lthough Claimant had experience in the construction industry, it was as an employee; he did not engage in his own construction business." (Board op. at 5.) The Board also stated that Claimant was not hired as a contractor to do anything specific, and his position, therefore, was a general laborer. Finally, the Board stated Claimant was "under the supervision" of Wang. (Board op. at 5.) We will examine the basis for the Board's findings seriatim.

With respect to Claimant's experience in the construction industry, the WCJ found only that Claimant had worked for the past four years for Stone King[6]

---

[5] "The WCJ, as the ultimate fact-finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight." *Edwards*, 134 A.3d at 1161 (internal quotation marks and citation omitted).

[6] Stone King does kitchen and bath remodeling. (R.R. at 44a.)

5

doing remodeling and that he had done remodeling for 15 years. (F.F. No. 5k.) This finding is supported by Claimant's testimony. (R.R. at 44a, 55a.) In light of this WCJ finding, it would be fair for the Board to conclude that Claimant worked in the role of employee for four years with Stone King. But neither the WCJ's findings nor the record support the Board's conclusion that all of Claimant's construction experience was in the role of employee. It was error for the Board to expand the breadth of the WCJ's finding in this regard where the record does not support that expansion. Additionally, even if the Board's conclusions about Claimant's past status were supported by the record, his status in the past is of very limited significance.

Likewise, the Board's assertion that Claimant "did not engage in his own construction business" cannot be fairly extended to his entire remodeling career. We recognize that the WCJ stated, in the context of Claimant's work for Eastern Taste, that there was no evidence that Claimant had established a business in which he had a proprietary interest. (WCJ's op. at 4.) Though the lack of a proprietary interest in a business is a factor to be considered,[7] this factor standing alone is legally insufficient to warrant a conclusion that Claimant was an employee of Eastern Taste.

With respect to whether Claimant was hired to do anything specific, the WCJ found "Claimant was hired to do remodeling ...." (F.F. No. 9b.) The Fund contends that while Wang testified that Claimant was not hired for any

---

[7] *See* discussion, *infra*, concerning factors to consider in determining whether an employer-employee relationship exists as set forth by the Pennsylvania Supreme Court in *Universal Am-Can* and related analysis.

specific tasks within the remodeling project, Claimant was hired specifically for the remodeling project. At the hearing, Claimant was asked what he was hired to do. (R.R. at 32a.) Claimant responded by giving examples of the work he was performing, such as tiling the floor and putting something on the ceiling, and stated that he was doing interior remodeling. (R.R. at 32a.) Additionally, while Wang stated that Claimant was not hired for anything specific, Wang also stated that he told Claimant to do whatever the blueprint said. (R.R. at 79a-80a.) Moreover, both Claimant and Wang testified that Claimant was not expected to work in the restaurant once the remodeling was completed. (R.R. at 49a-50a, 59a, 73a.) Thus, viewing this evidence in the light most favorable to the prevailing party and giving it the benefit of all inferences reasonably deduced therefrom, *Edwards*, a person could reasonably conclude that Claimant was hired specifically for remodeling. Consequently, the WCJ's finding that Claimant was hired to do remodeling is supported by substantial evidence, and therefore, was binding on the Board. The Board erred by disregarding the WCJ's finding and substituting its finding that Claimant was not hired to do anything specific from which it inferred, also erroneously, that Claimant's position was that of a general laborer.

With respect to whether Claimant was "under the supervision" of Wang, (Board op. at 5), this, too, was neither the WCJ's finding, nor a fair inference therefrom. The WCJ's findings of fact simply state that Wang was "in charge of what needed to be done." (F.F. No. 9d.) In his discussion, the WCJ states that Wang told Claimant "what he wanted done" and Claimant's job "was to do it[,]" explaining "[t]his is essentially the same relationship that property owners

7

typically have with painters, plumbers, electricians, carpenters and other remodelers. These specialists bring their time and expertise." (WCJ's op. at 4.)

Wang testified that he got the blueprints from the architect and provided them to the workers. (F.F. No. 6f; R.R. at 78a.) Wang testified that he was not in charge of the construction process, and that he did not direct Claimant's specific work activities because Claimant was the experienced remodeler. (F.F. Nos. 6f; R.R. at 78a, 82a.) Indeed, Wang had no construction or remodeling experience and testified that he did not know anything about construction. (F.F. No. 6f; R.R. at 73a.) Wang testified that he was just there to buy materials when needed. (R.R. at 78a.) Further, Claimant testified that at the time of his injury, Wang was out buying welding sticks. (F.F. No. 5i; R.R. at 46a.) Renkuar also testified that Wang was in charge but that Wang never told Renkuar what to do on the construction site. (F.F. Nos. 7a & c; R.R. at 89a-90a.) Viewing this evidence in the light most favorable to the prevailing party and giving it the benefit of all inferences reasonably deduced therefrom, as we are required to do,[8] a reasonable person could conclude that Wang "was in charge of what needed to be done" in a manner similar to that of property owners and specialists, such as painters, plumbers, etc., as explained by the WCJ. In essence, when the WCJ's statement is taken in context of this explanation, the reasonable inference from this finding is that Wang was in charge of what needed to be done only in terms of the overall goal of the project and not in a step-by-step, supervisory capacity.

---

[8] *Edwards*.

In sum, the Board exceeded its authority by making "findings," which, at a minimum, went beyond those made by the WCJ. Arguably, the evidence might support some of the statements made by the Board. However, this is immaterial as the record supports the findings made by the WCJ. *See Moberg v. Workers' Compensation Appeal Board (Twining Village)*, 995 A.2d 385 (Pa. Cmwlth. 2010); *see also Edwards*, 134 A.3d at 1161 (stating that it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ). Because the Board engaged in impermissible fact-finding and then relied on those "facts" to support its conclusion that Claimant was an employee, the Board erred and its conclusion cannot stand.[9] Importantly, although the question of whether one is an employee is a question of law, it must be answered based on the unique *facts* of each case. *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328 (Pa. 2000). The Board did not base its legal conclusion on the *facts* as found by the WCJ, and that was error.

Having found that the Board erred by engaging in new fact-finding and drawing new inferences, and having further found that the WCJ's findings of fact are supported by substantial evidence and inferences reasonably deduced from such evidence, we are now tasked with determining whether the evidence, nonetheless, was sufficient to legally conclude Claimant was an employee of Eastern Taste. Because the determination as to the existence of an

---

[9] We recognize that our Supreme Court has stated that "'neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment, and that inferences favoring the claim need make only slightly stronger appeal to reason than those opposed.'" *Universal Am-Can, Ltd.*, 762 at 330 (*quoting Diehl v. Keystone Alloys Co.*, 156 A.2d 818, 820 (Pa. 1959)). This does not mean that the Board can make its own findings.

9

employer/employee relationship is a question of law, on this issue, our scope of review is plenary and our standard of review is *de novo*. *Edwards*. The Fund argues that based on the WCJ's binding findings of fact, the WCJ properly concluded that Claimant was not an employee of Eastern Taste. We agree.

Whether one's status is that of an employee or independent contractor "is a crucial threshold determination that must be made before granting workers' compensation benefits." *Universal Am-Can*, 762 A.2d at 330. This is because independent contractors cannot recover benefits under the Workers' Compensation Act (WC Act).[10] *Edwards*. The claimant bears the "burden to establish an employer/employee relationship in order to receive benefits." *Universal Am-Can*, 762 A.2d at 330.

Section 104 of the WC Act defines an employee to be "synonymous with servant, and includes—[a]ll natural persons who perform services for another for a valuable consideration, exclusive of … persons whose employment is casual in character and not in the regular course of the business of the employer …." 77 P.S. § 22. There is no bright line rule for determining whether a particular relationship is that of an employer-employee or owner-independent contractor. *Universal Am-Can*. Nevertheless, our Supreme Court has established the following factors that must be considered when making such determination:

> Control of manner work is to be done; responsibility for
> result only; terms of agreement between the parties; the
> nature of the work or occupation; skill required for

---

[10] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1-1041.4, 2501-2708.

> performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Id*. at 333 (quotation marks and citations omitted) (*quoting Hammermill Paper Company v. Rust Engineering Company*, 243 A.2d 389, 392 (Pa. 1968)). "Whether some or all of these factors exist in any given situation is not controlling." *Id*. Although each factor is relevant, "control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status." *Id*. "Moreover, it is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised." *Id*. (emphasis in original).

We have already discussed the evidence supporting the WCJ's finding that Wang was "in charge of what needed to be done," stating that Wang told Claimant "what he wanted done" and Claimant's job "was to do it." (F.F. 9d, WCJ's op. at 4.) The WCJ explained "[t]his is essentially the same relationship that property owners typically have with painters, plumbers, electricians, carpenters and other remodelers. These specialists bring their time and expertise." (WCJ's op. at 4.) The reasonable inference from the evidence is that Wang was in charge of the overall goals of the project and did not control the manner in which the work was to be completed. Where one reserves no control over the means of accomplishing a contract but merely reserves control as to the result, "the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant." *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841 (Pa. Super. 2012). Additional factors that are relevant here are that

11

Eastern Taste is a restaurant, not a construction business, and that Claimant was hired to perform remodeling. Claimant did not expect to work in the restaurant after the remodeling. Lastly, although Wang provided some tools and the materials, Claimant used his own tools and van.

Based on these facts, and keeping in mind that Claimant bears the burden of proof to establish an employer-employee relationship, *Universal Am Can*, and that we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence, *Edwards*, the WCJ's conclusion that Claimant was not an employee was reasonable. Thus, we cannot say that it was in error as a matter of law.[11]

That does not end our inquiry, however. We must also consider whether Claimant would be defined as an employee pursuant to the CWMA. The CWMA concerns the construction industry and affects the determination of who is an independent contractor versus an employee under the WC Act. *See* sections 2 & 3 of the CWMA, 43 P.S. §§ 933.2, 933.3. Section 2 of the CWMA, 43 P.S. § 933.2, defines the terms "employer" and "employee" as having the same meaning given to them in sections 103 and 104, respectively, of the WC Act, 77 P.S. §§ 21, 22. Because we have already determined that Claimant was not an employee of Eastern Taste under section 104 of the WC Act, 77 P.S. § 22, we need not address that further here. However, Section 3 of the CWMA provides the requisite, and

---

[11] The Board also concluded, contrary to the WCJ's conclusion, that Claimant was not excluded as an employee under section 104 of the WC Act, 77 P.S. § 22, because his employment was not casual. Because of our disposition, we need not address this.

12

different, criteria under which an individual who performs services in the construction industry for remuneration will be deemed an independent contractor for purposes of workers' compensation.[12]  43 P.S. § 933.3.   If a worker falls within the purview of the CWMA and does not meet the requirements to be considered an independent contractor under the CWMA, then that individual will be deemed to be an employee for purposes of workers' compensation.  *See* 43 P.S. § 933.3. Significantly, section 3 of the CWMA applies only to "an individual who performs services *in the construction industry* for remuneration …."  43 P.S. § 933.3(a) (emphasis added).

Here, the WCJ found that the CWMA was not applicable, because Eastern Taste is a restaurant in the restaurant business and not in the construction business.[13]  (WCJ's op. at 4.)  The WCJ further noted his belief that the CWMA

---

[12] Section 3(a) of the CWMA provides as the general rule:

> For purposes of workers' compensation, … an individual who performs services in the construction industry for remuneration is an independent contractor only if:
>      (1)     The individual has a written contract to perform such services.
>      (2)     The individual is free from control or direction over performance of such services both under the contract of service and in fact.
>      (3)     As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 933.3(a).  Section 3 further sets forth criteria related to the aforementioned elements, as well as factors that are not to be considered in the determination.  43 P.S. § 933.3(b), (c).

[13] The WCJ stated, however, that if the CWMA applied, then the result would be entirely different. Claimant would be deemed an employee pursuant to the CWMA, because, among other reasons, there was no written contract.  (WCJ's op. at 4.)

13

was never intended to apply to all construction activities without regard to context.[14]  (WCJ's op. at 4.)

Thus, the dispositive question to determining if one falls within the purview of the CWMA is whether the individual is performing services for remuneration "in the construction industry."  This is a question of first impression.  Although the plain language of the CWMA applies only to those individuals who are performing services for remuneration "in the construction industry,"[15] the CWMA does not explicitly define the phrase "in the construction industry."

The CWMA defines the term "construction,"[16] but it does not define the term "industry."  Therefore, the term must be construed according to its common and approved usage.  *See* section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a).  The term "industry" is commonly defined as "skill, employment involving skill" and "a department or branch of a craft, art, business or manufacture."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1155 (2002).

---

[14] The Board did not address the CWMA, apparently because it was not necessary to do so given the Board's conclusion that Claimant was an employee pursuant to the WC Act and its related case law.  We can decide this issue without a remand to the Board, however.  "Issues of statutory interpretation present questions of law to which a plenary scope of review and *de novo* standard of review apply."  *S & H Transport, Inc. v. City of York*, 102 A.3d 599, 601 n.4 (Pa. Cmwlth. 2014), *aff'd*, 140 A.3d 1 (Pa. 2016).

[15] *See* 43 P.S. § 933.3(a).

[16] The CWMA defines "construction" as "[e]rection, reconstruction, demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work done on any real property or premises under contract, whether or not the work is for a public body and paid for from public funds."  43 P.S. § 933.2.

14

Claimant argues that the CWMA applies because the statute makes no distinctions as to what the primary business purpose of the employer may be. Claimant also argues that, at the time of his injury, Eastern Taste had not yet opened for business, and therefore, its only operation was currently restaurant construction. Claimant maintains that by virtue of the fact that Eastern Taste chose to undertake the construction and remodeling, it in essence took on the role of a general contractor in the construction industry. Giving Claimant the benefit of the doubt that arguably, the meaning of the phrase "in the construction industry" is ambiguous, we may resort to resources beyond the plain language of the statute to discern the legislative intent of the General Assembly. *Commonwealth v. Highhawk*, 687 A.2d 1123 (Pa. Super. 1996). Section 1921(c) of the Statutory Construction Act of 1972 permits an interpreting body to consider:

(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. § 1921(c). Further, we are to "presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable." *Highhawk*, 687 A.2d at 1126. After reviewing the relevant factors above, we conclude that the question must be answered by looking at each particular situation in context, and specifically, with regard to the putative employer.

15

The CWMA was intended to limit those who would be deemed independent contractors, as opposed to employees, and was intended to address concerns that some employers were misclassifying workers as independent contractors, rather than employees, in order to avoid things such as payment of unemployment taxes and workers' compensation premiums.[17] *See* H. JOURNAL, 193D-33, Reg. Sess., at 743 (Pa. 2009).

---

[17] In particular, Representative Lentz, who was one of the sponsors of House Bill 400, which, after amendments, ultimately became the CWMA, stated:

> Some construction firms routinely classify their employees as "independent contractors" for the specific purpose of avoiding the payment of decent wages, health benefits, pensions, as well as Federal and State and local employment taxes that other legitimate employers pay.
>
> …
>
> The fact that this is an open and flagrant practice that siphons money from the revenues that the State is otherwise due makes it even more important that we address it now during this critical economic period in our history.
>
> …
>
> The bill in its current form gives the Department of Labor [and Industry] the ability to crack down on this practice to capture that revenue, but it also gives legitimate employers a way to comply with the law and to continue in the construction industry in a legitimate fashion.

H. JOURNAL, 193D-33, Reg. Sess., at 743 (Pa. 2009). "Statements made by legislators during the enactment process, although not dispositive of legislative intent, may be properly considered as part of the contemporaneous legislative history." *Lukes v. Department of Public Welfare*, 976 A.2d 609, 619 (Pa. Cmwlth. 2009) (superseded by statute on other grounds as stated in *In re Silberstein*, 11 A.3d 629 (Pa. Cmwlth. 2011)).

Additionally, documents issued by the Pennsylvania Department of Labor and Industry (Department)[18] since the enactment of the CWMA establish that it is the character and context of the putative employer that is determinative. We gain significant insight from the Department Secretary's annual legislatively mandated report[19] in which she detailed the Department's enforcement activities and listed the reasons for rejecting referrals concerning alleged misclassification violations under the CWMA. Those reasons for rejected referrals included, that "the employers were not in the construction industry[.]"[20] Additionally, the Department's complaint form seeks information on the business being complained about and asks, "[w]hat type of construction services does the business perform?"[21] "We are mindful that, when ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce." *Dixon v. Workers' Compensation Appeal Board (Medrad, Inc.)*, 134 A.3d 518, 526 (Pa. Cmwlth. 2016).

---

[18] The Department is responsible for administering and enforcing the CWMA. *See* Sections 13, 14 & 17 of the CWMA, 43 P.S. §§ 933.13, 933.14, 933.17.

[19] *See* Section 14 of the CWMA, 43 P.S. § 933.14 (requiring the Secretary of the Department to issue an annual report detailing "data on the previous calendar year's administration and enforcement" of the CWMA).

[20] KATHY MANDERINO, ACTING SECRETARY OF LABOR & INDUSTRY COMMONWEALTH OF PENNSYLVANIA, ADMINISTRATION AND ENFORCEMENT OF THE CONSTRUCTION WORKPLACE MISCLASSIFICATION ACT IN 2014 13 (March 1, 2015), http://www.dli.pa.gov/Individuals/Labor-Management-Relations/Documents/Act%2072%20report%202014.pdf? (last visited January 4, 2017).

[21] PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY BUREAU OF LABOR LAW COMPLIANCE, CONSTRUCTION WORKPLACE MISCLASSIFICATION COMPLAINT FORM, LLC-72 02-11 at 1, http://www.dli.pa.gov/Individuals/Labor-Management-Relations/llc/act72/Documents/ LLC-72.pdf (last visited January 4, 2017).

Lastly, we are mindful that when construing legislative intent, we presume that the General Assembly did not intend a result that is absurd or unreasonable. *Highhawk*. Claimant's argument, that by virtue of Eastern Taste choosing to undertake construction and remodeling, it in essence took on the role of a general contractor in the construction industry, leads to an absurd and unreasonable result. Such interpretation of the CWMA would have the effect of turning every individual and business choosing to undertake any remodeling project into an employer "in the construction industry." Thus, given the legislative intent, including the Department's interpretation, we conclude that when determining whether the CWMA is applicable to the situation at hand, the construction activity must be analyzed and considered in the context of the putative employer's industry or business.

Here, the WCJ found that the putative employer, Eastern Taste, was a restaurant business and not a construction business. (F.F. No. 9a.) This finding is supported by substantial evidence. (R.R. at 73a.) Therefore, because Eastern Taste is not in the construction industry, the CWMA does not apply to the circumstances here.

Accordingly, based on the foregoing, we conclude that Claimant failed to sustain his burden of proving that he was an employee of Eastern Taste. Therefore, we reverse the order of the Board; Claimant is ineligible for workers' compensation benefits.

_____
JULIA K. HEARTHWAY, Judge

Judge Cosgrove dissents.

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Labor and Industry, :
Uninsured Employers Guaranty :
Fund, :
          Petitioner :
           :
          v. : No. 627 C.D. 2016
           :
Workers' Compensation Appeal :
Board (Lin and Eastern Taste), :
          Respondents :

O R D E R

AND NOW, this 17th day of February, 2017, the order of the Workers' Compensation Appeal Board is hereby reversed.

_____
JULIA K. HEARTHWAY, Judge