**[J-7-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| DEPARTMENT OF LABOR AND INDUSTRY, UNINSURED EMPLOYERS GUARANTY FUND | : | No. 27 EAP 2017 |
| | : | |
| | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | February 17, 2017 at No. 627 CD |
| v. | : | 2016 reversing the order entered on |
| | : | March 23, 2016 by the Workers' |
| | : | Compensation Appeal Board at No. |
| WORKERS' COMPENSATION APPEAL | : | A15-1320. |
| BOARD (LIN AND EASTERN TASTE) | : | |
| | : | ARGUED:  March 6, 2018 |
| | : | |
| APPEAL OF: FU XIANG LIN | : | |


**OPINION**


JUSTICE WECHT                                                        DECIDED:  June 26, 2018

In this appeal, we consider whether an individual contracted to perform renovations for a restaurant falls within the Construction Workplace Misclassification Act ("CWMA" or "the Act"), 43 P.S. §§ 933.1-933.17, such that he may be eligible for compensation under the Workers' Compensation Act.[1]  The Commonwealth Court determined that the CWMA is inapplicable under these circumstances, that the claimant otherwise failed to establish that he was an employee of the restaurant, and that he accordingly is ineligible for workers' compensation benefits.  We affirm the order of the Commonwealth Court.

The material facts are undisputed.  On February 21, 2011, Fu Xiang Lin began performing remodeling work for Eastern Taste, a restaurant that had not yet opened for

---

[1]        Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

business. Lin and three other individuals were hired by Lin's sister-in-law, Sai Zheng Zheng, who was the owner of Eastern Taste. They did not sign a written contract, but Lin was to be paid for his services on a *per diem* basis. Zheng's husband, Kond Bin Wang, oversaw the project. Wang told Lin what sort of work needed to be done, but he did not direct Lin's specific activities because Lin was a seasoned remodeler. Lin had worked in remodeling for fifteen years, and he was the most experienced individual involved in the project. Although Wang purchased the materials necessary for the project, Lin brought and used his own tools. Lin was hired only to complete the remodeling work, and he was not expected to work at the restaurant after it opened.

On March 28, 2011, while repairing a chimney, Lin fell from a beam and landed on a cement floor, suffering serious injuries. In addition to numerous bone fractures, the impact caused trauma to Lin's spinal cord, rendering him paraplegic. On December 22, 2011, Lin filed a workers' compensation claim petition against Eastern Taste. On February 27, 2012, because Eastern Taste did not maintain workers' compensation insurance, Lin additionally filed a petition for benefits from the Uninsured Employers Guaranty Fund (the "Fund").[2] Both Eastern Taste and the Fund filed answers denying, *inter alia*, the existence of an employment relationship. Lin's claim petitions were consolidated and assigned to Workers' Compensation Judge Bruce Doman (the "WCJ") for disposition.

At a hearing before the WCJ on April 27, 2012, Lin testified on his own behalf. Eastern Taste presented the testimony of Wang and Gheng Renkuar, another individual

---

[2] The Fund, as prescribed by statute, exists "for the exclusive purpose of paying to any claimant or his dependents workers' compensation benefits due and payable . . . and any costs specifically associated therewith where the employer liable for the payments failed to insure or self-insure its workers' compensation liability . . . at the time the injuries took place." 77 P.S. § 2702(c). If an injured employee's claim "is not voluntarily accepted as compensable, the employee may file a claim petition naming both the employer and the fund as defendants." 77 P.S. § 2704.

who worked on the remodeling project. Based upon the testimony, the WCJ concluded that the "critical facts in this matter are essentially undisputed," and made the following findings:

> a. Eastern Taste is a restaurant, not a construction business.
>
> b. [Lin] was hired to do remodeling before the restaurant had ever opened.
>
> c. The most experienced person on the job in the construction business was [Lin].
>
> d. The owner's husband was in charge of what needed to be done.
>
> e. [Lin] was paid on a *per diem* basis to do it along with three others.
>
> f. [Lin] used his own tools and van. The owner's husband provided tools and materials as well.

WCJ Decision, 4/17/2013, at 3. The WCJ further found that Lin's work was not conducted "in the regular course" of Eastern Taste's business, and that Lin's "employment was casual in character." *Id.*[3] Accordingly, the WCJ concluded that Lin failed to prove that he was an employee[4] of Eastern Taste, and, thus, that Lin was ineligible for workers' compensation benefits.

Nonetheless, the WCJ recognized that "the result would be entirely different" if the CWMA applied. *Id.* at 4. In relevant part, the CWMA prohibits the "improper classification of employees" as independent contractors so as to avoid liability for workers'

---

[3] As the Commonwealth Court later noted, although the WCJ characterized these latter determinations as findings of fact, they more accurately are classified as conclusions of law.

[4] Section 104 of the Workers' Compensation Act defines employees as "[a]ll natural persons who perform services for another for a valuable consideration," but excludes from the definition "persons whose employment is casual in character and not in the regular course of the business of the employer." 77 P.S. § 22.

compensation benefits, and provides that "an individual who performs services in the construction industry for remuneration" may be classified as an independent contractor only if certain conditions are met. 43 P.S. § 933.3(a).[5] The WCJ concluded that the CWMA was inapplicable to Eastern Taste because it "is a restaurant in the restaurant business and not in the construction business." WCJ Decision, 4/17/2013, at 4.

With regard to the relationship between Wang and Lin, the WCJ observed that Wang merely informed Lin what tasks he wanted to be completed, and it was Lin's job to do them. The WCJ opined that "[t]his is essentially the same relationship that property owners typically have with painters, plumbers, electricians, carpenters and other remodelers. These specialists bring their time and expertise." Id. Essentially, the WCJ concluded that, although these types of contractual relationships may involve construction activities, the individual who hires such a specialist is not "in the construction industry" for purposes of the CWMA. Because the CWMA was inapplicable, the WCJ determined that Lin's classification as an independent contractor rather than an employee was not improper under 43 P.S. § 933.3. Accordingly, the WCJ entered an order denying Lin's claim petitions.

Lin appealed the WCJ's order to the Workers' Compensation Appeal Board ("Board"). On January 6, 2015, the Board reversed, concluding that Lin's employment

---

[5]     Specifically, for purposes of the CWMA, an "individual who performs services in the construction industry for remuneration" may be classified as an independent contractor only if:

(1)  The individual has a written contract to perform such services.

(2)  The individual is free from control or direction over performance of such services both under the contract of service and in fact.

(3)   As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 933.3(a).

was not "casual" in nature, and that Lin was an employee of Eastern Taste for purposes of workers' compensation. However, because the Board based its decision upon the general definition of an employee under the Workers' Compensation Act, it did not consider the applicability of the CWMA. The Board remanded to the WCJ to make any necessary findings and to enter an award of compensation. On October 28, 2015, in accordance with the Board's order, the WCJ made additional findings regarding the extent of Lin's injuries, wages, and litigation costs, then entered an order granting Lin's claim petition against Eastern Taste, with the Fund secondarily liable for the payment of compensation.

The Fund appealed the WCJ's order to the Board. However, because the Board previously had considered the dispositive legal issue, the Fund merely sought to make the Board's earlier order final for purposes of appeal to the Commonwealth Court.[6] The Board obliged on March 23, 2016, and the Fund appealed the Board's order to the Commonwealth Court.

On February 17, 2017, the Commonwealth Court reversed the Board's order, holding that Lin is ineligible for workers' compensation benefits. *Dep't of Labor & Indus., Uninsured Emp'rs Guar. Fund v. W.C.A.B. (Lin & Eastern Taste)*, 155 A.3d 103 (Pa. Cmwlth. 2017). As was the case before the WCJ and the Board, the dispositive question was whether Lin was an employee of Eastern Taste or an independent contractor. Because independent contractors cannot recover workers' compensation benefits, the Commonwealth Court noted, "[w]hether one's status is that of an employee or

---

[6]    *See Shuster v. W.C.A.B. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1287 (Pa. Cmwlth. 2000) ("[N]o matter whether a party appeals the Board's decision . . . or the WCJ's decision . . . he or she is required to follow the normal procedure to appeal a WCJ decision which is to file an appeal with the Board within 20 days after notice of that decision has been received. The party can then file a motion with the Board requesting that the Board make its previous order final.") (citation omitted).

independent contractor 'is a crucial threshold determination that must be made before granting workers' compensation benefits.'" *Id.* at 109 (quoting *Universal Am-Can, Ltd. v. W.C.A.B. (Minteer)*, 762 A.2d 328, 330 (Pa. 2000)).

The Commonwealth Court first reviewed the Board's stated bases for reversal of the WCJ's decision and determined that the Board relied upon facts that were inconsistent with the WCJ's findings. Stressing that the WCJ's findings of fact are binding upon the Board if supported by substantial evidence, the Commonwealth Court observed that the Board "exceeded its authority by making 'findings,' which, at a minimum, went beyond those made by the WCJ." *Id.* Because the WCJ's findings were supported by substantial evidence, the court concluded that "the Board engaged in impermissible fact-finding and then relied on those 'facts' to support its conclusion that [Lin] was an employee." *Id.* In other words, "[t]he Board did not base its legal conclusion on the *facts* as found by the WCJ, and that was error." *Id.* (emphasis in original).

After rejecting the Board's "findings" and confining its inquiry to the facts as found by the WCJ, the Commonwealth Court analyzed whether those facts supported the conclusion that Lin was an employee of Eastern Taste, as opposed to an independent contractor. To resolve that question, the Commonwealth Court relied upon the multifactorial inquiry that this Court set forth in *Universal Am-Can*, which directs a court to consider:

> Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Id.* at 110 (quoting *Universal Am-Can*, 762 A.2d at 333). The Commonwealth Court stressed the WCJ's finding that Wang was "in charge of what needed to be done," but

that he "did not control the manner in which the work was to be completed." *Id.* The court reiterated the WCJ's comparison to the contractual relationship between property owners and "painters, plumbers, electricians, carpenters and other remodelers," who have the status of independent contractors, not employees. *Id.* The court noted that Eastern Taste is a restaurant, not a construction business, and that Lin was hired to perform remodeling work, not to work in the restaurant when it opened. Lastly, the Commonwealth Court found significance in Lin's use of his own tools. Because these factors tended to demonstrate that Lin was an independent contractor, the Commonwealth Court found no error in the WCJ's original determination that Lin failed to satisfy his burden of proof to establish an employer/employee relationship. *Id.* at 110-11; *see Universal Am-Can*, 762 A.2d at 330 ("It is a claimant's burden to establish an employer/employee relationship in order to receive benefits.").

Having rejected the Board's conclusion that Lin was an employee of Eastern Taste under Section 104 of the Workers' Compensation Act pursuant to the *Universal Am-Can* framework, the Commonwealth Court turned to the separate inquiry of whether Lin may be deemed an employee pursuant to the CWMA. Noting that this was a question of first impression, the Commonwealth Court observed that, as a general matter, "[t]he CWMA concerns the construction industry and affects the determination of who is an independent contractor versus an employee" for purposes of workers' compensation. *Lin*, 155 A.3d at 111. Although Section 2 of the CWMA, 43 P.S. § 933.2, incorporates the definitions of "employer" and "employee" used in Sections 103 and 104 of the Workers' Compensation Act, 77 P.S. §§ 21, 22, the CWMA sets forth distinct criteria that must be satisfied before an "individual who performs services in the construction industry for remuneration" may be classified as an independent contractor for purposes of workers' compensation. *See* 43 P.S. § 933.3(a). The Commonwealth Court observed that, "[i]f a worker falls within the

purview of the CWMA and does not meet the requirements to be considered an independent contractor under the CWMA, then that individual will be deemed to be an employee for purposes of workers' compensation." *Lin*, 155 A.3d at 111.

The Commonwealth Court noted that the operative language of the CWMA restricts the application of the Act to services performed "in the construction industry." 43 P.S. § 933.3(a). Thus, the court reasoned, whether the Act applies to a given individual depends upon the correct interpretation of this phrase. Noting that the CWMA defines the term "construction,"[7] but provides no definition for the term "industry," the Commonwealth Court concluded that the latter term must be construed according to its common and approved usage. *Lin*, 155 A.3d at 112 (citing 1 Pa.C.S. § 1903(a)). The court observed that "[t]he term 'industry' is commonly defined as 'skill, employment involving skill' and 'a department or branch of a craft, art, business or manufacture.'" *Id.* (quoting *Industry*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1155 (2002)).

Lin argued that the CWMA applied to his relationship with Eastern Taste because the Act does not specify a primary business purpose of the employer as a prerequisite to its applicability; Eastern Taste had not yet opened for business and was engaged only in construction activities at the time of his injury; and, by undertaking the remodeling project, Eastern Taste essentially took on the role of a general contractor in the construction industry. The Commonwealth Court elected to give Lin the "benefit of the doubt that arguably, the meaning of the phrase 'in the construction industry' is ambiguous," and thus, the court turned to the rules of statutory construction in order to ascertain the intent of the General Assembly in drafting the CWMA. *Id*; *see* 1 Pa.C.S. § 1921(c).

---

[7] The CWMA defines "construction" as "[e]rection, reconstruction, demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work done on any real property or premises under contract, whether or not the work is for a public body and paid for from public funds." 43 P.S. § 933.2.

Pursuant to the canons of statutory construction, the Commonwealth Court consulted the legislative history of the CWMA, as well as the manner in which the Pennsylvania Department of Labor and Industry ("Department") has interpreted and applied the Act. *See* 1 Pa.C.S. § 1921(c)(7)-(8). The court noted that, during debates in the Pennsylvania House of Representatives, Representative Brian Lentz, a sponsor of the bill that would become the CWMA, stated that "[s]ome *construction firms* routinely classify their employees as 'independent contractors' for the specific purpose of avoiding the payment of decent wages, health benefits, pensions, as well as Federal and State and local employment taxes that other legitimate employers pay." *Lin*, 155 A.3d at 112 n.17 (quoting H.R. JOURNAL, No. 193D-33, at 743 (May 5, 2009)) (emphasis added). The court further relied upon an annual report issued by the Department's Secretary in 2015, which detailed the Department's enforcement of the Act during 2014. Notably, the Department provided explanations for instances in which the Department found no violation of the CWMA, which included determinations that the employers in question were not in the construction industry. *Id.* at 113. Moreover, the Department's standard complaint form for the reporting of alleged CWMA violations asks complainants to identify the type of construction services that the putative employer performs. *Id.* The Commonwealth Court accordingly concluded that both the legislative history of the CWMA and administrative guidance from the Department suggest that "it is the character and context of the putative *employer* that is determinative" of the applicability of the CWMA. *Id.* (emphasis added).

Finally, the Commonwealth Court noted that courts must "presume that the General Assembly did not intend a result that is absurd or unreasonable." *Id.*; *see* 1 Pa.C.S. § 1922(1). Under Lin's suggested interpretation of the CWMA, the court reasoned, the Act would apply to contractual relationships far beyond its intended reach,

"turning every individual and business choosing to undertake any remodeling project into an employer 'in the construction industry.'" *Id.* at 114. In the court's view, this would be an absurd and unreasonable result, rendering Lin's interpretation of the Act untenable.

The Commonwealth Court concluded that, "when determining whether the CWMA is applicable to the situation at hand, the construction activity must be analyzed and considered in the context of the putative employer's industry or business." *Id.* Returning to the WCJ's decision in the instant case, the Commonwealth Court agreed that the CWMA is inapplicable because Eastern Taste was "a restaurant business and not a construction business," and, as such, was not "in the construction industry." *Id.* Consequently, the Commonwealth Court found no error in the WCJ's decision, and it reversed the Board's contrary order.

Lin filed a petition for allowance of appeal, which we granted in order to consider the following question:

> Whether the Commonwealth Court's decision interpreting the language of the Construction Workplace Misclassification Act (CWMA) to mean that the CWMA only applies to circumstances where the putative employer's industry or business is construction was in error?

*Dep't of Labor & Indus., Uninsured Emp'rs Guar. Fund v. W.C.A.B. (Lin & Eastern Taste)*, 170 A.3d 1006 (Pa. 2017) (*per curiam*).

Before this Court, Lin reiterates the arguments that he advanced before the Commonwealth Court. He argues that the applicability of the CWMA turns upon the nature of the work performed, not the employer's business purpose. Lin notes that the Act "makes no such distinctions as to what the primary business purpose of the employer may be," nor does it "state that the business industry of the employer controls whether the [A]ct applies." Brief for Lin at 13. Instead, Lin argues, the CWMA focuses upon "the services being performed by the individual." *Id.* Lin further notes that Eastern Taste was

not yet operating as a restaurant when he sustained his injuries, so the "only operation of Eastern Taste at the time of the accident was restaurant construction." *Id.* Because Eastern Taste elected to undertake the remodeling project, Lin argues that "they in essence took on the role of a general contractor in the construction industry." *Id.* Thus, Lin argues that he was performing "services in the construction industry for remuneration" and that, because his relationship with Eastern Taste did not satisfy the express statutory criteria provided in 43 P.S. § 933.3(a)(1)-(3), he could not be classified as an independent contractor for purposes of workers' compensation.

The Fund argues that the Commonwealth Court correctly identified the threshold inquiry that controls the applicability of the CWMA, namely whether the putative employer's "industry or business is construction." Brief for Fund at 11. The Fund suggests that this interpretation is commanded by the Act's plain language. Even if the language of 43 P.S. § 433.3(a) is ambiguous, however, the Fund contends that the Commonwealth Court correctly employed the principles of statutory construction to ascertain the General Assembly's intent.

The Fund notes that the CWMA "was enacted to address a prevalent problem in the construction industry where construction businesses would misclassify employees as independent contractors in order to avoid paying expenses such as unemployment compensation taxes and workers' compensation premiums." *Id.* at 14. Like the Commonwealth Court, the Fund points to statements of legislators who were considering the bill that became the CWMA, and notes that their focus was upon abuses by "construction firms" and employers "in the construction industry." *Id.* at 14-17. The Fund notes that debates in the Pennsylvania House of Representatives specifically addressed whether the Act would apply to homeowners who hire a contractor for home renovations, and that Representative Lentz, a sponsor of the bill, asserted that it would not. *Id.* at 16

(citing H.R. JOURNAL, No. 193D-33, at 755 (May 5, 2009)). According to the Fund, this legislative history makes clear that the CWMA was directed at "construction businesses, *i.e.*, putative employers who sell and perform construction services, not, as [Lin] argues, any person or business not in the construction business that hires someone on a limited basis to undertake a remodeling project." *Id.* at 17.

The Fund further relies upon the administrative materials that the Commonwealth Court cited, including the Department's CWMA complaint form and its 2014 annual report of CWMA enforcement activities. *Id.* at 20-21. The Fund observes that the CWMA complaint form requires the complainant to specify the type of construction services that the putative employer performs, and that the Department rejects enforcement referrals where that employer is not in the construction industry. The Fund argues that we should defer to the Department's treatment of the nature of the putative employer's business as dispositive of the CWMA's applicability.

Finally, the Fund argues that Lin's suggested interpretation of the CWMA would lead to an absurd result. To adopt Lin's position, the Fund contends, "would unreasonably subject persons and businesses that occasionally hire those in the construction trades, *e.g.*, roofers, plumbers, HVAC installers and remodelers, to work on discrete projects to administrative penalties and criminal sanctions under the CWMA." *Id.* at 22. Beyond the distinct penalties imposed by the CWMA, the Fund further explains that Lin's interpretation would subject private persons and non-construction businesses to a variety of administrative and criminal sanctions for the failure to maintain workers' compensation insurance or to pay unemployment compensation taxes. *See id.* at 23. The Fund argues that, because Lin's interpretation would extend the CWMA to a broad range of contractual relationships beyond those contemplated by the legislature, and because the application

of the Act to those relationships would result in severe, unintended consequences, this Court must reject Lin's approach.

"Generally, agency-level decisions—such as those of the WCJ and [the Board] here—are to be affirmed on appeal so long as the essential findings are supported by substantial evidence and there has been no constitutional violation, procedural irregularity, or error of law." *IA Constr. Corp. v. W.C.A.B. (Rhodes)*, 139 A.3d 154, 158 (Pa. 2016) (citing 2 Pa.C.S. § 704; *Leon E. Wintermyer, Inc. v. W.C.A.B. (Marlowe)*, 812 A.2d 478, 485 (Pa. 2002)). We defer to the factual findings of the WCJ, who, in the workers' compensation context, is the "ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Id.* at 161 (quoting *Daniels v. W.C.A.B. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003)).

However, our task in the instant case is primarily one of statutory interpretation, a question of law as to which our standard of review is *de novo* and our scope of review is plenary. *See Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et seq.*, which directs us to ascertain and effectuate the intent of the General Assembly." *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016) (citing 1 Pa.C.S. § 1921(a)).

> In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 11 A.3d 960, 965 (Pa. 2011).

*Thomas Jefferson Univ. Hosps.*, 162 A.3d at 389 (quoting *Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1192-93 (Pa. 2012)) (citation modified).

In relevant part, the CWMA provides:

**(a) General rule.**--For purposes of workers' compensation, unemployment compensation and improper classification of employees provided herein, an individual who performs services in the construction industry for remuneration is an independent contractor only if:

(1) The individual has a written contract to perform such services.

(2) The individual is free from control or direction over performance of such services both under the contract of service and in fact.

(3) As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

\* \* \*

**(c) Factors not to be considered.**--The failure to withhold Federal or State income taxes or pay unemployment compensation contributions or workers' compensation premiums with respect to an individual's remuneration shall not be considered in determining whether the individual is an independent contractor for purposes of the Workers' Compensation Act or the Unemployment Compensation Law.

**(d) Workers' compensation.**--

(1) An individual who is an independent contractor as determined under this section is not an employee for purposes of the Workers' Compensation Act. For purposes of this section, each employment relationship shall be considered separately.

(2) Nothing in this act shall be construed to affect section 321(2) of the Workers' Compensation Act.

43 P.S. § 933.3.

In essence, the dispositive interpretive question is whether "an individual who performs services in the construction industry for remuneration," *id.* § 933.3(a), refers to

an individual who works for a construction business, or to an individual whose job duties merely involve construction activities. As the Commonwealth Court noted, the CWMA provides a definition for the term "construction," but not for the term "industry" or the phrase "construction industry." *See* 43 P.S. § 933.2; *supra* n.7. As such, we interpret the term "industry" according to its common and approved usage. *See* 1 Pa.C.S. § 1903(a). In the relevant context, Webster's Dictionary defines "industry" as "a department or branch of a craft, art, business, or manufacture . . . [especially] one that employs a large personnel and capital especially in manufacturing," or "a group of productive or profit-making enterprises."[8]

In using the phrase "in the construction industry," the CWMA appears to focus upon the nature of a putative employer's business, just as an individual employed by an automobile manufacturer may be said to work "in the automobile industry." However, the overall structure of the clause in dispute classifies an individual by reference to the services that the *individual* performs, not necessarily the specific business activities of the putative employer. Consequently, we agree with the Commonwealth Court that the clause "an individual who performs services in the construction industry" is ambiguous. Accordingly, we employ the principles set forth in the Statutory Construction Act.

To resolve ambiguity in a statutory provision, we may consider:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

---

[8]    *Industry*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1155-56 (1971 ed.); *see also Industry*, MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/industry (last visited May 21, 2018).

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). Further, we must presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1); *see also Office of Admin. v. State Employees' Ret. Bd.*, 180 A.3d 740, 753 (Pa. 2018).

With regard to the perceived need for the Act and the mischief that the General Assembly sought to remedy, the legislature clearly intended to combat the deceptive business practice of classifying employees as independent contractors so as to avoid the expenses and responsibilities attending the employment relationship—a practice more widespread in construction than in many other industries. Prominent commentators on Pennsylvania's workers' compensation law have noted that, prior to the enactment of the CWMA, as many as nine percent of Pennsylvania's workers were misclassified as independent contractors, and that one quarter of those misclassified workers were in the construction industry. *See* DAVID B. TORREY & ANDREW E. GREENBERG, PENNSYLVANIA WORKERS' COMPENSATION § 2:9.10 (3d ed.). As the Fund highlights, in detailing the need for the CWMA in the House of Representatives, Representative Lentz, a sponsor of the legislation, explained:

> It is widely recognized as a problem throughout the country and in particular here in Pennsylvania. The United States Department of Labor estimates that in the year 2000, approximately 30 percent of all construction firms engaged in the practice of misclassifying employees, which is about three times the misclassification rate in other industries.

Some construction firms routinely classify their employees as "independent contractors" for the specific purpose of avoiding the payment of decent wages, health benefits, pensions, as well as Federal and State and local employment taxes that other legitimate employers pay.

H.R. JOURNAL, No. 193D-33, at 743 (May 5, 2009).[9]  The problem that was identified related to the practices of construction firms, suggesting that the CWMA was intended to regulate those entities, not entities such as restaurants that undertake a remodeling project.

The legislative history speaks still more directly to the present inquiry.  In discussing the details of the CWMA, Representative Lentz responded to a concern of one of his colleagues that the Act would classify a homeowner who hires a contractor to work on her home as an "employer."  Representative Lentz stated that, under the Act, "[a]n employer is someone in the business of construction.  That would not include a homeowner that hires somebody to build a porch."  *Id.* at 755.  This statement, too, indicates that the CWMA was not intended to apply to relationships like the one at issue, between a restaurant and an individual hired to perform remodeling services.

Our review of the contemporaneous legislative history finds further support in materials issued by the Department in connection with its implementation and enforcement of the CWMA.  The Department's CWMA complaint form requests the name and contact information for the business suspected of a CWMA violation, and asks: "What type of construction services does the business perform?"[10]  If the CWMA applied to all

---

[9]    Although statements made by legislators during the enactment process are not dispositive of legislative intent, "they may properly be considered as part of the contemporaneous legislative history."  *Commonwealth v. Wilson*, 602 A.2d 1290, 1294 n.4 (Pa. 1992).

[10]    PA DEP'T OF LABOR & INDUS., BUREAU OF LABOR LAW COMPLIANCE, CONSTRUCTION WORKPLACE MISCLASSIFICATION COMPLAINT FORM, LLC-72 02-11, at 1,

manner of construction activities without regard to the nature of the putative employer's business, as Lin would have us conclude, then this information would be immaterial to the Department's enforcement efforts. Further, in its annual report regarding its CWMA enforcement activities in 2014, the Department included several reasons that it rejected referrals and found no violation of the Act, including that "the employers were not in the construction industry."[11] In that same report, the Department described the operation of the CWMA as prohibiting "*construction employers* from classifying as independent contractors workers who do not satisfy all of the definitional criteria of an independent contractor." 2014 Report, *supra* n.11, at 3 (emphasis added). Like the above-discussed legislative history, this administrative guidance is not dispositive, but serves as one of the numerous tools that a court may employ to interpret ambiguous statutory language. *See* 1 Pa.C.S. § 1921(c)(7)-(8).

We agree with the Fund that the above-discussed tools of statutory construction support the Commonwealth Court's interpretation. However, perhaps most importantly, Lin's interpretation of the CWMA leads to an absurd and unreasonable result. In the instant case, the WCJ opined—and we agree—that the contractual relationship between Lin and Eastern Taste was "essentially the same relationship that property owners typically have with painters, plumbers, electricians, carpenters and other remodelers." WCJ Decision, 4/17/2013, at 4. If we were to accept Lin's interpretation of the Act, then

---

http://www.dli.pa.gov/Individuals/Labor-Management-Relations/llc/act72/Documents/ LLC-72.pdf (last visited May 18, 2018).

[11] KATHY MANDERINO, ACTING SECRETARY OF LABOR & INDUSTRY, ADMINISTRATION AND ENFORCEMENT OF THE CONSTRUCTION WORKPLACE MISCLASSIFICATION ACT IN 2014 (Mar. 1, 2015), at 13, http://www.dli.pa.gov/Individuals/Labor-Management-Relations/ Documents/Act%2072%20report%202014.pdf (last visited May 18, 2018) (hereinafter "2014 Report"). Although the Department has continued to issue its required annual report regarding its CMWA enforcement activities, its reports for the years after 2014 do not detail specific reasons for the Department's rejection of referrals. Thus, the Department's more recent reports are of lesser utility for purposes of the instant case.

the CWMA would apply to all of these contractual arrangements, so long as the contemplated work involves some manner of construction activity. By Lin's reasoning, if a homeowner planned to remodel her kitchen, she would take on "the role of a general contractor in the construction industry." Brief for Lin at 13. Any individual whom she might hire to complete that project, then, would be her "employee" unless the parties satisfied the stringent requirements of 43 P.S. § 433.3(a)(1)-(3), even if both parties fully understand the individual to be an independent contractor. At that point, should she fail to classify that individual as an employee for purposes of workers' compensation, and to provide the required workers' compensation coverage, then she would be subject to criminal prosecution under the CWMA. *See* 43 P.S. §§ 933.4(a)(1), 933.5. The CWMA would impose similar burdens under the Unemployment Compensation Law,[12] and would subject her to similar criminal penalties for her failure to comply with that law as well. *See* 43 P.S. §§ 933.4(a)(2), 933.5.

Further, under Lin's interpretation, the consequences to that homeowner would extend beyond the discrete penalties imposed by the CWMA. In specifying that the classification of an independent contractor in the construction industry is to be made "[f]or purposes of workers' compensation [and] unemployment compensation," 43 P.S. § 433.3(a), a manifest purpose of the CWMA was to subject putative employers within its ambit to the requirements of the Workers' Compensation Act and the Unemployment Compensation Law. If the CWMA would classify a homeowner as an "employer" simply by virtue of her decision to hire a kitchen remodeler, then she could be subject to administrative and criminal penalties under those separate statutory schemes, in addition to those set forth in the CWMA. For instance, under Section 305 of the Workers' Compensation Act, she suddenly would be required to maintain workers' compensation

---

[12]     43 P.S. §§ 751, *et seq.*

insurance and, should she fail to do so, could be subject to criminal prosecution for a misdemeanor or a felony. *See* 77 P.S. § 501(b) (providing that an employer who fails to maintain workers' compensation insurance shall, upon conviction, "be guilty of a misdemeanor of the third degree," or, for an intentional violation, "shall be guilty of a felony of the third degree").

We cannot assume that, in enacting the CWMA, the General Assembly intended, *sub silentio*, to so drastically alter the scope of employment law in this Commonwealth, or to attach such severe consequences to relatively ordinary contractual relationships, such as the one at issue. Because we cannot countenance an absurd and unreasonable result, 1 Pa.C.S. § 1922(1), we must reject Lin's suggested interpretation of the CWMA. Accordingly, we agree with the Commonwealth Court that, "when determining whether the CWMA is applicable to the situation at hand, the construction activity must be analyzed and considered in the context of the putative employer's industry or business." *Lin*, 155 A.3d at 114. Specifically, in confining its applicability to individuals who perform services "in the construction industry," 43 P.S. § 933.3(a), the CWMA refers only to those individuals who work for a business entity that performs construction services, namely "[e]rection, reconstruction, demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work." 43 P.S. § 933.2. Stated otherwise, the CWMA is inapplicable where the putative employer is not in the business of construction. Because "Eastern Taste is a restaurant, not a construction business," WCJ Decision, 4/17/2013, at 3, the CWMA does not preclude Lin's classification as an independent contractor. Accordingly, we find no error in the Commonwealth Court's well-reasoned opinion.[13]

---

[13] Because our inquiry herein is confined to the applicability of the CWMA, we offer no opinion regarding the Commonwealth Court's separate determination that Lin failed to establish that he was an employee under Section 104 of the Workers' Compensation Act.

The order of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.